Wilmot v. Court-Appointed Receiver 23-7932. Thank you. We've got three parties arguing today, so we'll begin. Mr. Parakis, you've reserved three minutes for rebuttal. Yes, Your Honor. All right, you may proceed when you're ready. Good morning. I may please the Court. My name is Konstantin Parakis. I want the law firm of Stevens & Lee PC. We are counsel to the appellants John Johnston and Edward Wilmot of Deloitte Financial Advisory Limited. In their capacities as the joint provisional liquidators and the authorized foreign representatives of Omnia Unlimited. Today, the appellants seek the reversal of the order of the District Court dated November 1, 2023 and entered November 2, 2023, granting the receivers March 18, 2022 motion permanently enjoining the appellants and Omnia from asserting Omnia's rights and interests as a creditor of the receivership entities, confirming the receiver's disallowance of what we'll call claim number 145 and authorizing the receiver to consent to the release of the indemnity escrow amount to Senior Health Insurance Company of Pennsylvania. We believe that reversal error was committed by the District Court on two bases. First, that the receiver's filing of her claims analysis report and the subsequent motion that is the subject of the order today impermissibly violated the stay imposed by Chapter 15 and Section 362 of the Bankruptcy Code. So let's start with that. So the plain language of the stay provision of the Code talks about actions brought against the debtor. Are you arguing either that this is an action against the debtor or that that doesn't limit the scope of the stay? What we're arguing is that it is a violation of the stay and that there is an action against the debtor, specifically Omnia secured interests and liens against the receivership property. And so therefore, both motions which were filed after... Who is the debtor? The debtor is Omnia Limited. I'm sorry. In terms of the stay, how is Omnia the debtor when it's making a claim? Yes, the claim was filed back in 2019 on Omnia's behalf by, we'll call it BAM for shorthand, right? Unbeknownst to all parties at that time, Omnia was... My question is if it's Omnia that is making the claim, how does it become a debtor for purposes of the stay? Does it have an estate for these purposes? Not in the Chapter 15. There is no estate in the Chapter 15. If there is no estate, how can there be a stay? Well, because Section 362, upon recognition of Omnia's permuted proceedings as a foreign main proceeding under Chapter 15, Section 362 of the stay becomes applicable to Omnia to preserve its rights and its property within the territorial jurisdiction of the United States. What we argue here is that Omnia secured interest against the receivership... The receiver was asserting a defense when it made its objection. So if you're saying it couldn't object to the claim, I mean, what you're saying is the receiver was defenseless in essence? No, what we're arguing is that the receiver's motion goes beyond simply a claims objection. They sought to enjoin the appellants here who are the... From further pursuing their claims. From further pursuing their actions which they were authorized by the Bermuda Court to perform. Which was an affirmative claim by Omnia as a debtor in the Bermuda process. So what I'm asking is, do you have authority that says the automatic stay, let's take the automatic stay from the Bermuda action, that the automatic stay applies where the debtor in that action is the person seeking affirmative relief rather than responding? Because I have at least one case that says this only applies to actions against the debtor, and that's what the plain language suggests. I don't have anything from Bermuda, unfortunately. No, no, from us. But from us, but even from us, it's more to the effect that we believe that it is not simply a defensive response to a claim filed by Omnia. What if Omnia had not, through BAM, filed that affirmative claim in this action? Well, then obviously there's a time bar issue which is a whole separate matter in this appeal, which we believe if the court doesn't accept the fact that there's a violation, at the very least we do have, and I believe satisfy the excusable neglect standard under Pioneer to allow the appellants to work with the receivership and to resolve the issue of Omnia's security interest against the receivership. How do you satisfy the Pioneer factors? Because I'm at a loss to find out. That your client acted in good faith, was aware of the 45-day rule, and the prejudice to all the parties involved in this. Sure. And to the really other creditors that are trying to seek recovery. And to the receiver who's trying to maximize the pot of money that will be available to others. I'll address the good faith part first. The appellants were not appointed as the liquidators until September of 2020, and the Chapter 15 before the bankruptcy court here wasn't filed until December of 2020. The claim was filed back in 2019 before the appellants were even in the picture. The appellants had no idea that any of this was going on because Omnia itself was in a liquidation proceeding and therefore the books and records were, to put it kindly, bare. So once we were made aware of the receivership's actions, such as the 2022 motion to enjoin the appellants, they took all steps to discuss this with the receiver, try to resolve the issues. But the appellants, your clients, are acting on behalf of Omnia. Correct. And why would Omnia try to hide a potential credit that, you know, income that it may be coming? I don't think it was a hiding of a credit. The issue is Omnia being a liquidation and in the status that it was in when the appellants were appointed by the remunerative court that they just did not have access to that kind of information. But it was publicized, right? The receiver publicized the claims that it was authorizing and not. And there was notice of claim 145 being denied. So how does your clients, who are then appointed to sort of represent Omnia, not become aware of that? Well, one, my clients were never actually served with any of the, with that, with the disallowance motion back in 2021. And I believe there was publication notice, which, you know, can be found to be not adequate, especially in circumstances as here where we have Omnia, which is in a liquidation, a liquidator was appointed. Liquidators like a Chapter 7 trustee in bankruptcy are provided a little bit more latitude in terms of their knowledge of the underlying business because they're kind of coming in bare, most times in a company either in distress. But their goal is to look for any and all assets that might be out there to maximize, again, just like the receiver in this case, the amount of money that will be available to satisfy all debts.  Agreed. And once aware of this, of the receiver's actions, my clients took whatever steps they could take as expeditiously as they could take to preserve those. As to the prejudice to the receivership, the receivership has been ongoing for nearly a decade now. Isn't the process, the claims process, substantially complete? I believe so, from what I understand. Wouldn't it be prejudicial to now? Well, not necessarily. Open it all up again? Well, because the money that would potentially be paid to Omnia has already been escorted off and would be payable, if not to Omnia, would probably go to the intervener in this appeal, SHIP. So the money's already set aside. It's not like creditors are going to get more or less. It's whether SHIP gets more or less. It's been set aside as part of a resolution of the claims process. Well, it's a resolution of the claim against SHIP specifically. All the other creditors, I believe, are not involved, regardless of how this matter is resolved. So there's really no prejudice to the receivership to at least allow my client, because remember, the receiver has the basis for the claim, right? Claim number 145 provides the basis for the security interest. When my clients responded to the motion in 2022, we provided the amount that was owed under the security. It's really just a matter of updating that for three years hence to try to resolve this matter. So there is really no prejudice here because the money's already been set aside. All right. Thank you. You've reserved three minutes. Thank you. We'll hear from the receiver. I believe that's Mr. Wynick. And you have eight minutes when you're ready. Thank you, Your Honor. May it please the Court. Eric Wynick of Atterberg PC along with Andrew Halpern on behalf of Melanie Siganowski, the court-appointed receiver of PPCO and PPLO. Quite simply, the appellants have failed to articulate how the district court abused its discretion in granting the receiver's motion. Enron, issued by this court, makes clear that the exceptions and the instances where an extension will be granted to a court-approved deadline are rare, and it's a hardline rule. The appellant here has failed to satisfy the under Pioneer. In sum, there are four reasons why the district court should be afforded discretion and the order affirmed. First, the receiver ran a robust process. It afforded all claimants an opportunity to appear and be heard. Second, the appellants have not demonstrated excusable neglect as is their burden under Pioneer. And the focus there of the four factors, the most important, is the reason for the delay. And we haven't heard articulated a real reason for the more sizable delay than we just heard from counsel. It was really years, not months, as indicated. And I'll go through the schedule and timeline in a moment on that. Third, the appellants are bound by their agent. Bam. And the adverse interest exception does not apply here because of the double exception. In other words, they're trying to take advantage of the wrongdoing, the very they're complaining about, which is get the benefits of the note that the agent obtained through wrongdoing. And fourth, as the discussion started with, there has been no automatic stay violation. The timeline is really critical. In February of 2019, the district court issued an order establishing a claims bar date. That was March 29, 2019. What do you do with the lack of direct notice? Notice was never sent to Omnia. So, you know, why should they be held to this? They actually, in addition to the publication notice and the notice that their agent received, they actually had direct notice of the proceedings because their bankruptcy schedule, which was one page long and had about 20 items on it, listed a loan to Platt & Partners as like a seventh or eighth item. That's December of 2020. At that same time, as early as December, but no later than February, the same joint liquidators appointed by the Bermuda Court were participating in highly contentious litigation in the Southern District in front of Judge Rakoff, in which the receiver was one of the primary plaintiffs. And they participated in a camp mediation at the Second Circuit. And that notice of appearance is in the appendix. So they were aware that A, they had a loan in December of 2020. That was one of their primary assets. And now as the latest being February of 2021, they know there's a proceeding involving the receiver. That was before the receiver issued her claims analysis report in March of 2021. And it was before the receiver, before the deadline for parties to object to any actions taken by the receiver with respect to those claims. Before the 45, the disallowance of the claim, their claim 145 and the notice that you had 45 days to object to that disallowance. That's correct. So it would be the receiver's position that there was at least four months between the filing of Chapter 15 in the Southern District when the loan or some loan to Platinum was listed as a primary asset of the Chapter 15 debtor and the deadline to object to the receiver's disallowance of Claim 145. And in your response earlier, you said, in addition to that, the schedule in the bankruptcy filed in Bermuda also included the loan? I can't speak to the filing in Bermuda. I can speak to the filing only the filing here. Okay. But that gives them, you know, the benefit of the doubt at latest. It was December of 2020. They've identified this loan and then they wait a year till February of 2022 to contact the receiver to inquire as to whether they may have any interests in the receivership. And under any standard that's far too long, they've waived any rights they had to participate in a long established process where the pre-bankruptcy, the pre-Bermuda proceeding entity had its own opportunity, just like the intervener ship, to file its own standalone claim separate and apart from that filed by the agent in 2019. And even if there was a claim that somehow BAM didn't, or there were no documents to explain the nature of the claim that was the substance of 145, you're suggesting that listing a loan to the entity should have at least put them on notice in their bankruptcy that they should look at this as a potential asset. Yes. Is that your argument? Yes, that's the argument. And they could have, at least I understand their contention that they've had difficulty obtaining documents from the prior officers and directors of the company, but they could have at least asserted the contours of a claim. I know counsel discussed cases where there's a relaxed pleading standard for trustees and other fiduciaries that come in subsequent to the original officers, but that's in the pleading. That's not an exemption or leniency as to deadlines that have already come and gone before the fiduciary was even appointed. And that's what they're trying to accomplish here. One other thing on the agency. With the adverse interest exception, I want to make clear appellant's contention is that they're entitled to the adverse interest because the receiver herself has portrayed the agent as a bad actor. What the receiver has portrayed is that the agent undertook fraudulent means to obtain the very notes that they now seek to assert a claim on. The other thing in terms of prejudice, I want to make clear with the escrow, because we have not yet seen even a proposed proof of claim that they'd like to submit, we don't know the contours of the claim. So we don't know that it's confined to the escrow amount. So there may well be disruption and prejudice to the rest of the claims process and the we don't know the contours of the actual claim. How do you respond to your opponent's claim that the money is there, it's just been set aside, it's not going to hurt any other potential secured or unsecured creditors? Well, I think that's what I was just discussing. Let me try to articulate it a little bit better in the short time remaining, which is because there's no draft proof of claim, no proposed proof of claim, we don't know what their claim entails. We don't know how high or how low it is. So we don't know that it's restricted to the escrow amount. If it's above the escrow amount, then it is going to eat into the distribution available to other creditors that have participated in the process that was set out years ago. Once a claim is disallowed and the 45-day period runs, is the money retained in escrow or is it then released? It has not yet been released because there's been no plan approved by the court yet. We've been waiting to finalize this claim and the ones that you're going to hear about in the next argument. Thank you. All right. Thank you, counsel. Thank you very much. We'll hear next from counsel for what we're all calling ship, Mr. Martin. Yes. May it please the court, my name is Craig Martin and I represent Senior Health Insurance Company of Pennsylvania as intervener in this appeal. I have three points that I would like to make addressing the standard of review, some of the timing and agency issues, and then discussing how a ruling in favor of the appellants would prejudice my client. Regarding the standard of review, I think it's very important to recall the abuse of discretion standard that Judge Kogan has presided over this SEC receivership action for a lengthy period and is very familiar with it and has been involved in all aspects of it. This court said in what's referred to in the briefing as NRA Enron Corp 419 F3rd 115, this court in 2005 at page 129, that in considering issues like this, the court is particularly reluctant, absent evident arbitrariness to substantiate its judgment for that of a bankruptcy judge who has presided over the proceedings and who is most familiar with the parties and the potential impact of any late claim and whose ability to oversee an efficient reorganization would be undermined by the very process of second guessing itself. So we respectfully submit that on the record of this case, not only did Judge Kogan exercise appropriate discretion and did not abuse it, that the receiver gave these claimants every opportunity to submit arguments in support of their claim and those were not undermined. I want to turn next to the agency issues in the appellate record at page 432. A432 is the BAM claim and then at A471 attached to that claim is the actual agency agreement. And that agreement expressly addresses the ability of BAM to file proof of claim on behalf of the various note holders and also provides that in so doing they have full discretion and no fiduciary duty or obligation to prosecute such a claim. So the arguments here to some extent undermine the contract the expressed contractual language of the agency agreement and in syndicated loans, bond indentures and the like, it's very frequent that the underlying contracts govern the relationship between the various parties that trade in and out of the notes and what the agent does. And so we submit here that any argument that the claimants here should be given relief because their agent did not prosecute the claim or misplace. My client was familiar with the agency agreement. We filed our own proof of claim and we separately interacted and negotiated with Miss Siganowski and we reached settlement agreement. And that's part of the issue here turning to the how are we prejudiced. This the note purchase agreement which is also attached to the BAM claim provided for a series of four or five notes which my client funded the first couple with over 40 million dollars. In the context of the but because of the trading that had happened in the notes it was unclear who might actually have an interest and that's why the escrow was negotiated. We view Judge Kahn to your question that upon the expiration of the 45 days with with no party coming forward that the money should have been distributed to us. We've disputed with the receiver over that but we understand that they perhaps the more prudent route would be to hold on to that money just in case. Well I think that's the way she feels and certainly that goes to the due process argument and addresses the notice. The notice was provided to the agent. The agent had an obligation under the agreement to put a burden on a receiver or a bankruptcy estate to have to give notice to every potential party that may have traded in or out of a loan in the capital markets I submit would undermine the capital markets and would be a dangerous decision of this court based on its precedent. I see my time has expired unless the court has any further questions. I would simply ask that you deny this appeal and rule in favor of the receiver. Thank you counsel. Thank you. And Mr. Parakis you have an additional three minutes in rebuttal. Thank you. Just a couple of points. The receiver seems to rely on the fact that the 2021 disallowance motion seems to be so then why would the receiver feel it necessary to file this second injunction motion a year later in 2022 to confirm something that under the claims process should have been finalized 45 days after the 2021 report was issued. Obviously there's something amiss here. Why the receiver by doing that we believe acknowledges the fact that my clients did not receive proper notice. Counsel and and by doing so we did file Ms. Frisbee's declaration which provided the quantum of the of the claim that's at the record. You're arguing that because the receiver provided another opportunity that somehow is evidence that that's an admission that she was wrong in the first place. Yeah that is our that is our belief that there was really no reason if you look at the way that the district court process was set up it should end game should have been in 2021. No reason to have a comfort order a year later. So would you what's the outcome how does that change the outcome for your client if we said okay maybe the if we if we were to say well let's disregard the injunction and just rely on the denial of the claim that how does that solve your problem? It doesn't admittedly but again I think we fall back on the fact that we believe that we satisfy the pioneer excusable neglect standard. We also believe that that that we've discussed and it's in our papers about the lack of treasures to both the receivership as well as to ship. As I said the receive the appellant Ms. Frisbee filed an affidavit in support of the claim at the record on at page 426 and 427. So they're aware of the amount that we assert which is well below the escrow amount. Second the BAM claim number 145 which was filed provides this we'll call the material basis for the claim so it's not a surprise. We're not recreating the wheel here this would be a rather simple process to come to a conclusion and third like and again I know it's hard my clients are late to the party admittedly. However we're talking about one competing liquidation against another competing liquidation and as fiduciaries they did they moved as quickly as they could given the basis of what they had to assert their rights. Thank you. All right thank you counsel thank you to all of you we will take that matter under advisement.